Tab 2

*Gardner v. Anesthesia & Pain Consultants, PC*, 2004 Tenn. App. LEXIS 813 (Tenn. Ct. App. Nov. 30, 2004)
Case 3:05-cv-00275    Document 38-3    Filed 07/22/05    Page 1 of 16 PageID #: 556

Service: **Get by LEXSEE®**
Citation: **2004 Tenn. App. LEXIS 813**

*2004 Tenn. App. LEXIS 813, \**

ALAN GARDNER v. ANESTHESIA & PAIN CONSULTANTS, P.C.

No. E2003-03027-COA-R3-CV

COURT OF APPEALS OF TENNESSEE, AT KNOXVILLE

2004 Tenn. App. LEXIS 813

September 20, 2004, Session
November 30, 2004, Filed

**PRIOR HISTORY:** [*1] Tenn.R.Civ.P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded. Appeal from the Chancery Court for Sullivan County. No. 28472(L). Richard E. Ladd, Chancellor.

**DISPOSITION:** Affirmed.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff doctor appealed a grant of summary judgment to defendant medical group by the Chancery Court for Sullivan County (Tennessee) on the doctor's misrepresentation claims, as well as a directed verdict in favor of the group on his breach of contract and promissory estoppel claims. The jury returned a verdict for the group on the doctor's promissory fraud claim. The doctor had filed suit against the group after it terminated his employment.

**OVERVIEW:** The doctor argued that the group was guilty of misrepresentation and deceit in promising him a two-year contract as an inducement for him to relocate to the city in which the group was located and start work. In affirming, the court found no evidence of a false representation regarding an existing fact. The alleged misrepresentations involved statements of conjecture and future intentions. The allegations supported a claim for promissory fraud, a theory that the trial court allowed the doctor to pursue to a jury verdict. The trial court correctly determined that, taking the strongest legitimate view of the evidence in the doctor's favor, reasonable minds could only reach the decision that there was no contractual agreement between the parties for a two-year term of employment. The correspondence from the group was unequivocal in either including a 30-day termination term in any offer, or stating that negotiations would continue. The court found ample material evidence supporting the conclusion that the group's vice president did not have the intention not to carry out any promises he might have made. The jury was at liberty to believe him on that point, and apparently it did.

**OUTCOME:** The court affirmed the trial court's judgment.

**CORE TERMS:** summary judgment, misrepresentation, promissory fraud, negligent misrepresentation, directed verdict, employment agreement, conversation, negotiation, jury verdict, correspondence, employment contract, breach of contract, anesthesiologist, notice, fraudulent misrepresentation, promissory estoppel, material evidence, termination, fraudulent, evening, genuine issue of material fact, intentional misrepresentation, nonmoving party, material fact, existing fact, strongest, malpractice insurance, written contract,

operating room, written notice

## LexisNexis(R) Headnotes ◆ Hide Headnotes

Civil Procedure > Summary Judgment > Burdens of Production & Proof
Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN1** A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Tenn. R. Civ. P. 56.05, now Tenn. R. Civ. P. 56.06, provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial. More Like This Headnote

Civil Procedure > Summary Judgment > Standards of Review
Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN2** Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. Because only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. Therefore, appellate review of a trial court's grant of summary judgment is de novo on the record before the appellate court. More Like This Headnote

Torts > Business & Employment Torts > Deceit & Fraud

**HN3** When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation must have been made with knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that representation to his injury. The terms "intentional misrepresentation," "fraudulent misrepresentation," and "fraud" are synonymous. More Like This Headnote

Torts > Business & Employment Torts > Deceit & Fraud

**HN4** An essential element of the tort of fraud is that a defendant's misrepresentation relates to an existing (present) or past fact. More Like This Headnote

Torts > Business & Employment Torts > Negligent Misrepresentation

**HN5** In discussing the requirements for recovery for negligent misrepresentation actions against other professionals and business persons, liability in tort will result, despite the lack of contractual privity between a plaintiff and defendant, when: (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and (2) the defendant supplies faulty information meant to guide others in their business transactions; and (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relies upon the information. Similarly to intentional misrepresentation claims, Tennessee courts have uniformly required that a negligent misrepresentation claim must

consist of a statement of a material past or present fact. The tort of negligent misrepresentation cannot be based on conjecture, statements of opinion, puffing and sales talk, or representations of future events. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Standards Generally
Civil Procedure > Trials > Judgment as Matter of Law

*HN6* In ruling on a motion for directed verdict, trial courts must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. A court may grant the motion only if reasonable minds could reach only one conclusion from the evidence. Appellate courts apply the same standard in reviewing the trial court's decision on a directed verdict. More Like This Headnote

Contracts Law > Consideration > Sufficient Consideration
Contracts Law > Formation > Formation Generally

*HN7* A contract may be expressed or implied, written or oral, but, to be enforceable, it must, among other elements, result from a mutual assent to its terms, be predicated upon sufficient consideration, and be sufficiently definite for its terms to be enforced. Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain. The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. The fact that one or more terms of a proposed bargain are left open may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance. More Like This Headnote

Contracts Law > Formation > Acceptance
Contracts Law > Types of Contracts > Oral Agreements

*HN8* An acceptance, to be effectual, must be identical with an offer and unconditional. Where a person offers to do a definite thing, and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat, or it is a counter proposal, and in neither case is there an agreement. In order that there may be a meeting of the minds which is essential to the formation of a contract, the acceptance of the offer must be substantially as made. There must be no variance between the acceptance and the offer. Accordingly, a proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer and puts an end to the negotiation unless the party who made the original offer renews it, or assents to the modifications suggested. Therefore, it is possible that parties can make an oral agreement to bind themselves to prepare and execute a final written contract, but the oral agreement must include all essential terms to be incorporated in the final document. Additionally, that document is understood to be a mere memorial of the agreement already reached. If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; the so-called contract to make a contract is not a contract at all. More Like This Headnote

Civil Procedure > Appeals > Standards of Review > Standards Generally
Civil Procedure > Jury Trials > Province of Court & Jury

*HN9* The standard of appellate review when reviewing a jury verdict approved by a trial court is whether there is any material evidence to support the verdict. Tenn. R. App. P. 13(d). More Like This Headnote

Evidence > Procedural Considerations > Burdens of Proof

Torts > Business & Employment Torts > Deceit & Fraud

HN10 To prove a claim based on promissory fraud, a claimant must show that the alleged misrepresentation embodies a promise of future action without the present intention to carry out the promise. More Like This Headnote

**COUNSEL:** Robert L. Arrington and Steven C. Huret, Kingsport, for Appellant Alan Gardner, M.D.

Frank A. Johnstone and Andrew T. Wampler, Kingsport, for Appellee Anesthesia and Pain Consultants, P.C.

**JUDGES:** SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and CHARLES D. SUSANO, JR., J., joined.

**OPINIONBY:** SHARON G. LEE

**OPINION:** This appeal arises from the decision of Anesthesia & Pain Consultants, P.C. ("A&PC") to terminate the employment of Dr. Alan Gardner. After A&PC fired Dr. Gardner, he brought this action alleging breach of employment contract, fraudulent and negligent misrepresentation, promissory estoppel, and promissory fraud. The trial court granted A&PC summary judgment on the misrepresentation claims. At the close of Dr. Gardner's proof at trial, the trial court granted A&PC a directed verdict on his claims of breach of contract and promissory estoppel. The jury returned a verdict in favor of A&PC on the promissory fraud claim. We affirm the judgment of the trial **[*2]** court in all respects.

### I. Factual Background

At all material times, the Defendant Anesthesia and Pain Consultants was a group of anesthesiologists practicing medicine in the tri-cities area of East Tennessee. In the fall of 1996, Plaintiff Dr. Gardner responded to A&PC's advertisement seeking to hire an anesthesiologist. Dr. Gardner flew to Kingsport and interviewed with Dr. James Cottrell, who was then Defendant's Vice President. Dr. Cottrell explained that A&PC had recently taken over a contract to provide anesthesiologists to Indian Path Hospital in Kingsport, and that A&PC was seeking someone to become the Chief of Anesthesiology at Indian Path. Dr. Gardner testified that Dr. Cottrell told him that there would definitely be a written employment contract governing the terms of this position.

Following the job interview, negotiations continued between Plaintiff and Defendant (through Dr. Cottrell) about employment terms. On November 25, 1996, Dr. Cottrell sent Dr. Gardner a letter stating the following:

> Dear Alan,
>
> As proposed in our conversation of last evening, we are offering you a position at Indian Path Medical Center Hospital in Kingsport, TN. This **[*3]** offer includes six (6) months probationary period, at the end of which by mutual agreement will automatically continue (if neither party gives a thirty (30) day written notice) as the residual of our first year contract.
>
> We truly look forward to working with you and we are firmly committed to a long term relationship. Looking forward to hearing from you soon.

The six months' probationary period was apparently due to some concern of A&PC's doctors raised by Dr. Gardner's letters of recommendation. Dr. Gardner testified that "there was some question about people skills and my, my willingness to compromise on certain issues. . ." Attached and included with this letter was a printed contract form styled "Employment Agreement[:] Non Shareholder Physician" which stated, among other things, that "the Employee hereby accepts such employment upon the terms and conditions specified in the Agreement" and provided terms on such items as employee's duties, professional standards, compensation, term, restrictive covenants, and the like. The employment agreement, which contained signature lines at the end, provided under the "termination" section that either the employee or employer may **[*4]** terminate employment "without cause, upon thirty (30) days written notice" to the other.

On December 18, 1996, Dr. Cottrell sent Dr. Gardner the following letter:

> Dear Alan,
>
> It is a pleasure to offer you employment in our practice. The group was impressed with you, your credentials and letters of reference. If these arrangements are acceptable to you we would desire you to start as soon as convenient.
>
> **Our offer to you is as follows:**
>
> $ 150,000.00 annual for 1997
>
> $ 170,000.00 annual for 1998
>
> $ 3,000.00 CME
>
> $ 3,000.00 relocation expense
>
> $ 1,500.00 Medical and Dental reimbursement
>
> **Other Benefits:**
>
> Health Insurance
>
> Life Insurance
>
> Malpractice Insurance
>
> Pension Plan

A non-shareholder physician employment agreement, nearly identical to the first, but with some changes such as a $ 3,500 allowance for continuing medical expenses instead of the original $ 3,000 allowance, was included with the above letter. This agreement form included the same thirty days written notice for termination provision.

On December 20, 1996, Dr. Gardner sent Dr. Cottrell a handwritten letter that began by

stating, "As you requested, I write **[*5]** to specify the modifications I would prefer in my proposed Employment Agreement with your group." Dr. Gardner's letter specified some seven requested amendments to the agreement, and requested clarification of other terms of employment about which he was apparently unsure. This letter included the following proposed amendments:

> 3. Amend 8-1-and 8-2 to provide for a progressive increase to six months notice requirement for termination by either party without cause over the first six months of employment - one month notice after one month employment, two months after two months employment . . .and six months notice after six months employment.
>
> Further amend 8-2 to provide for employment at another Group work site, should the contract between IPH [Indian Path Hospital] and A[&]PC terminate.
>
> * * *
>
> Please include a clause at least anticipating, without committing, that I am being hired ultimately to be Chief of Anesthesiology at Indian Path after six months; and memorializing our discussions that I would receive at least a $ 20,000.00 pay increase plus an extra share of profit-sharing over-and-above what I would receive as a staff anesthesiologist.
>
> We also need to **[*6]** discuss the discrepancy about pension participation you have discussed with me versus what your accountant says is allowable under the terms of your plan - this is a significant problem as it represents some $ 45,000.00 of compensation over the next 1 1/2 years.

(Emphasis in original).

On January 2, 1997, Dr. Gardner received a letter from A&PC's president, Dr. Alan H. Pugh, which stated as follows:

> Dear Dr. Gardner:
>
> Thank-you for your response to our employment offer. However, I regret to inform you that the corporation will not be able to grant your requested changes to the contract. I must temporarily suspend our offer pending a final recommendation from the Board.
>
> If you have other opportunities, please feel free to pursue them.

Dr. Gardner got on the telephone to Dr. Cottrell immediately after receiving the above letter, and he received another letter, dated the following day, January 3, 1997, stating:

> Dear Dr. Gardner:
> Per our conversation of yesterday evening, we anticipate you working Monday

January 6, 1997 pending outcome of contract negotiations. We will reimburse you as per the contract forward and provide malpractice insurance.

[*7]

Dr. Gardner did begin work on January 6, 1997, and as the above letter anticipated, negotiations did continue on an employment agreement between the parties. The next letter from Dr. Cottrell to Dr. Gardner, dated January 13, 1997, stated as follows:

Dear Alan,

As per the accompanying letter the group is trying to come up with a fair common language contract for all our employed physicians, we feel this contract gives us a start.

As per your memo of December 20, 1996 item

1. We will agree to that change.

2. We will agree to pay tail [malpractice insurance coverage] if you leave at our request, without cause.

3. 8.1 We will agree to 30 days mutual notice for first 6 months, 90 days thereafter.

8.2 The group would certainly attempt this but could give no guarantee.

[4]. Severance pay is definitely not an option and I have never seen or heard of it in a private contract.

As previously discussed your target income for the first year is 150,000 with per diems calculated to reflect that if you work a fair share of the schedule, if you work more you make more; work less and make less. . .

The second year target income is 170,000.

The Jr. Partner year will be [*8] 178,500 or percent of net based upon shifts worked.

The pension plan documents are filed and have received IRS approval. With a January 1st employment date (We will date the agreement January 1, 1997) I feel we are in agreement.

If you are chosen which we hope will occur as the Medical Director at Indian Path, a joint hospital and A&PC appointment, then these addendums to your contract will occur.

1. 1,500 per month stipend.

2. A share of net Indian Path income at least 100% greater than any other physician practicing at Indian Path.

Dr. Gardner continued working as an anesthesiologist at Indian Path Hospital for several months; A&PC paid him on a *per diem* basis. On March 27, 1997,

A&PC, through Dr. Pugh, sent Dr. Gardner the following termination letter:

> Dear Dr. Gardner:
>
> Anesthesia and Pain Consultants, P.C., hereby gives notice that your employment will be terminated as of April 27, 1997. As we have discussed, you will be paid your normal per diem rate for the days you were scheduled for the month of April. We will not require your services after today, March 28, 1997. Thank you for your time of service with us.

Dr. Cottrell testified as follows regarding **[*9]** the decision to terminate Dr. Gardner's employment:

> The group was growing increasingly concerned about the, these issues that had been brought forth. Dr. Ian Darling, one of the partners in the group, went up to, to spend some time at Indian Path to actually observe the interactions and observe Dr. Gardner's behavior and functioning in the operating room.
>
> Q: Was a decision made concerning Dr. Gardner's continued employ- continued association with A&PC?
>
> A: Yes, but our hand was kind of, was stimulated as well.
>
> Q: Okay. Would you please tell the jury what you mean?
>
> A: The Administrator at Indian Path called and said that he was so concerned about the functioning of Dr. Gardner in the operating room that he, per our agreement, that he could ask us to remove a physician from practicing in his operating room, was exercising that option and no longer wanted Dr. Gardner to, to work in his operating rooms. It was becoming too disruptive.

Dr. Gardner filed the instant action on September 24, 1997. His initial complaint alleged breach of an employment contract. He later amended the complaint twice to include claims of fraudulent misrepresentation, negligent misrepresentation, promissory **[*10]** estoppel, and promissory fraud. The trial court, after twice denying A&PC's motion for summary judgment, granted its third motion for summary judgment on Dr. Gardner's misrepresentation claims. The case proceeded to jury trial, and at the close of Plaintiff's proof, the court granted a directed verdict in A&PC's favor on all other claims except for promissory fraud. The jury returned a verdict in favor of A&PC on the promissory fraud claim.

## II. Issues Presented

Dr. Gardner appeals, raising the following issues for our review:

> 1. Did the trial court err in granting A&PC summary judgment on his claims of fraudulent and negligent misrepresentation?
>
> 2. Did the trial court err in granting a directed verdict in A&PC's favor on the breach of contract and promissory estoppel claims?
>
> 3. Is there material evidence supporting the jury verdict for A&PC on the promissory fraud claim?

### III. Summary Judgment: Fraudulent and Negligent Misrepresentation

We first address Dr. Gardner's contention that the trial court erred in granting summary judgment to A&PC on his misrepresentation claims. Our standard of review regarding summary judgment is well settled. [*11] *HN1* A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. Tenn. R.Civ.P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Id.* In *Byrd v. Hall,* 847 S.W.2d 208 (Tenn.1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. . . .In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

[*12]

*Id.* at 211 (citations omitted) (emphasis in original).

*HN2* Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *Carvell v. Bottoms,* 900 S.W.2d 23, 26 (Tenn.1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *Bain,* 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this court. *Warren v. Estate of Kirk,* 954 S.W.2d 722, 723 (Tenn.1997).

The Supreme Court has stated the elements of a claim of intentional or fraudulent misrepresentation n1 as follows:

> *HN3* When a party intentionally misrepresents a material fact or produces a false impression in order to mislead another or to obtain an undue advantage over him, there is a positive fraud. The representation must have been made with knowledge of its falsity and with a fraudulent intent. The representation must have been to an existing fact which is material and the plaintiff must have reasonably relied upon that representation **[*13]** to his injury.

**_First Nat. Bank of Louisville v. Brooks Farms, 821 S.W.2d 925, 927 (Tenn.1991)._**

Dr. Gardner's allegations of misrepresentation are stated in his amended complaint as follows:

> [Dr. Gardner] was expressly told by an authorized representative of the Defendant that the Plaintiff and Defendant would document the employment arrangement with a written contract providing for a two year employment term with the compensation and fringe benefits as outlined in the Defendant's letter dated January 13, 1997. Those representations induced Plaintiff to move to Kingsport and start work for the Defendant in advance of executing a written contract. Plaintiff avers Defendant was guilty of misrepresentation and deceit in promising Plaintiff a two year contract as an inducement for Plaintiff to move to Kingsport and start work.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 The Supreme Court has noted that the terms "intentional misrepresentation," "fraudulent misrepresentation" and "fraud" are synonymous. _Concrete Spaces, Inc. v. Sender,_ 2 S.W.3d 901, 904 (footnote1) (Tenn.1999).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*14]**

At the time it considered A&PC's motion for summary judgment, two affidavits of Dr. Gardner had been filed with the court. Neither of them contains an allegation of fraud or misrepresentation. The only evidence before the trial court supporting Dr. Gardner's misrepresentation claims was a two-page excerpt from his pretrial discovery deposition, in which he testified:

> The whole gist of his [Dr. Cottrell's] conversation was, "This will only be a four day period, where you are an at will employee," and that after this meeting, "we will be able to hammer out the final details of your contract."

Q: What did he say about payment?

A: Essentially, he said, "You come and start on Monday, because we have scheduled you to work on Monday, and just assume that this letter of the [December] 18th is what we are offering you."

* * *

A: . . .Essentially he [Dr. Cottrell] said, "You trust this letter. This is how we are going to pay you. We will work out the language when you get here, and I think literally, I think we will have it worked out by this Thursday meeting and then we will meet after this Thursday meeting and see if we can come to the final wording."

HN4 An essential element **[*15]** of the tort of fraud is that the defendant's misrepresentation relates to an existing (present) or past fact. *First Nat. Bank of Louisville v. Brooks Farms,* 821 S.W.2d 925, 927 (Tenn.1991); *Stacks v. Saunders,* 812 S.W.2d 587, 592 (Tenn. App.1990). Construing Dr. Gardner's testimony in the most favorable light, for summary judgment purposes, there is still no evidence that A&PC made any misrepresentations of an existing fact.

Although intentional misrepresentation and negligent misrepresentation are obviously not identical claims, our analysis of them in the present case is similar. Tennessee has adopted the Restatement (2d) of Torts § 552 as the "guiding principle in negligent misrepresentation actions against other professionals and business persons." *Robinson v. Omer,* 952 S.W.2d 423, 427 (Tenn.1997). The *Robinson* court stated in pertinent part as follows:

> HN5 In discussing the requirements for recovery under Section 552, this Court has stated that liability in tort will result, despite the lack of contractual privity between the plaintiff and defendant, when, (1) the defendant is acting **[*16]** in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; and (2) the defendant supplies faulty information *meant to guide others in their business transactions;* and (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relies upon the information.

**Robinson, 952 S.W.2d at 427 (Emphasis in original).**

Similarly to intentional misrepresentation claims, our courts have uniformly required that a negligent misrepresentation claim "must consist of a statement of a material past or present fact." *McElroy v. Boise Cascade Corp.,* 632 S.W.2d 127, 130 (Tenn. App.1982). The tort of negligent misrepresentation cannot be based on conjecture, statements of opinion, puffing and sales talk, or representations of future events. *Cummins v. Opryland Productions,* 2001 WL 219696 at *8, 2001 Tenn. App. LEXIS 139 at *23, C/A No. M1998-00934-COA-R3-CV (Tenn. App. M.S. filed Mar. 7, 2001). Dr. Gardner cites and relies on *Cummins* as precedent

for his position, but the *Cummins* **[\*17]** court found representations concerning "existing agreements" which "involved a present or past fact," 2001 Tenn. App. LEXIS 139 at \*23, 2001 WL at \*9, and there are no such existing facts here.

The case of *Henley v. Labat-Anderson, Inc.*, 1991 WL 120403, 1991 Tenn. App. LEXIS 522, C/A No. 03A01-9104-CV-126 (Tenn. App. E.S. filed July 9, 1991) is, in our opinion, a case closer to the present one. In *Henley*, the plaintiff was given assurances by his employer: "you have a job" and, in written correspondence, "we expect to have jobs for all of the incumbent employees" and stating "intentions of hiring *you* as one of those employees who have contributed to the success of [defendant] OSTI." 1991 Tenn. App. LEXIS 522, [WL] at \*1-2 (emphasis in original). The *Henley* plaintiff sued for fraudulent and negligent misrepresentation after he subsequently received a letter declining to make him a job offer. *Id.* The *Henley* court, finding no evidence of a misrepresentation of an existing or past material fact, stated, "although an action for negligent misrepresentation replaces the scienter requirement in fraudulent misrepresentation with a less stringent reasonable care standard, the misrepresentation still must consist **[\*18]** of a statement of a material past or present fact." 1991 Tenn. App. LEXIS 522, [WL] at \*2.

As we have already noted, in this case there is no evidence of a false representation regarding an existing fact. The alleged misrepresentations, which we accept as true under our summary judgment standard, involve statements of conjecture and future intentions. These allegations support a claim for promissory fraud, a theory the trial court allowed Dr. Gardner to pursue to a jury verdict. We find no error in the trial court's decision granting summary judgment to A&PC on the misrepresentation claims.

*IV. Directed Verdict: Breach of Contract*

At the close of Dr. Garner's proof, the trial court granted A&PC a directed verdict on his claim of breach of contract. *HN6* In ruling on a motion for directed verdict, trial courts must take the strongest legitimate view of the evidence in favor of the non-moving party, construing all evidence in that party's favor and disregarding all countervailing evidence. *Gaston v. Tennessee Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn.2003); *Eaton v. McLain*, 891 S.W.2d 587, 590 (Tenn.1994). A court may grant the motion only if reasonable minds could **[\*19]** reach only one conclusion from the evidence. *Id.* Appellate courts apply the same standard in reviewing the trial court's decision on a directed verdict. *Sauls v. Evans*, 635 S.W.2d 377, 379 (Tenn.1982).

Dr. Gardner's breach of contract claim is based on his assertion that the parties reached an agreement that he would be employed for a two-year term, and therefore A&PC breached the alleged contract by giving him thirty days notice before terminating his employment. We note at the outset that although A&PC sent Dr. Gardner a contract form headed "Employment Agreement Non Shareholder Physician" on at least three separate occasions over the course of negotiations, neither party ever signed any written employment agreement.

The court in the *Cummins* case, *supra,* set forth the basic aspects of contract law applicable to this case as follows:

> *HN7* A contract may be expressed or implied, written or oral, but, to be enforceable, it must, among other elements, result from a mutual assent to its terms, be predicated upon sufficient consideration, and be sufficiently definite for its terms to be enforced. *Johnson v. Central Nat'l Ins. Co.*, 210 Tenn. 24, 34-35, 356 S.W.2d 277, 281 (1962); **[\*20]** *Jamestowne on Signal, Inc. v. First Fed. Sav. & Loan Ass'n*, 807 S.W.2d 559, 564 (Tenn. Ct. App.1990). With respect to

oral contracts, the court in *Jamestowne,* 807 S.W.2d at 564, also cited the Restatement Second of Contracts § 33 for the proposition that even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain. The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. The fact that one or more terms of a proposed bargain are left open may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance. Further, the basic rules of contract formation in Tennessee are well established: ᴴᴺ⁸⁺An acceptance, to be effectual, must be identical with the offer and unconditional. Where a person offers to do a definite thing, and another accepts conditionally or introduces a new term into the acceptance, his answer is either a mere expression of willingness to treat, or **[*21]** it is a counter proposal, and in neither case is there an agreement... In order that there may be a meeting of the minds which is essential to the formation of a contract, the acceptance of the offer must be substantially as made. There must be no variance between the acceptance and the offer. Accordingly a proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer and puts an end to the negotiation unless the party who made the original offer renews it, or assents to the modifications suggested. *Canton Cotton Mills v. Bowman Overall Co.,* 149 Tenn. 18, 31, 257 S.W. 398, 402 (1924) (citations omitted). Therefore, it is possible that parties can make an oral agreement to bind themselves to prepare and execute a final written contract, but the oral agreement must include all essential terms to be incorporated in the final document.

*Engenius Entertainment, Inc. v. Herenton,* 971 S.W.2d 12, 17 (Tenn. Ct. App.1997). Additionally, that document is understood to be a mere memorial of the agreement already reached. If the document or contract that the parties agree to make is to contain *any material term* **[*22]** that is not already agreed on, no contract has yet been made; the so- called "contract to make a contract" is not a contract at all.

**Cummins, 2001 Tenn. App. LEXIS 139, 2001 WL 219696 at *2.**

Dr. Gardner's first affidavit offers the following testimony about the alleged contract of employment:

> The terms of the offer(s) and acceptance(s) [and] the counteroffer(s) and their acceptance(s) which together resulted in the contract I sued the Defendant for breaching are found in multiple conversations I had with representatives of the Defendant, in writings exchanged (below identified) by the parties, and are found in the actions of the parties in response to the conversations and writings.

The affidavit then lists seven pieces of correspondence, five of which have been included in Section I of this opinion above, as "writings relied on by the Affiant as the source of the contract terms."

Dr. Gardner's equally illuminating second affidavit states the following:

> On the evening of January 2, 1997, I had a phone conversation with Dr. Cottrell. During that conversation it was implicitly or explicitly recognized all the terms of an employment contract had not been negotiated. **[*23]** Indeed by letter that date I was advised by Dr. Pugh "I must temporarily suspend our offer pending a final recommendation from the Board."
>
> * * *
>
> I recognized there was a risk if I commenced working for A&PC, without having negotiated all the important-to-me terms of an employment contract, that I might be unsuccessful in procuring a satisfactory contract. I also recognized that until the term (duration) of my employment had been agreed to I was an at will employee.
>
> But because of the negotiations that preceded January 3, 1997, and therefore prior to the phone conversation described in paragraph 1 above, and after the conversation that evening, I concluded A&PC was negotiating in good faith and was genuinely interested in at least a two (2) year term employment relationship. I viewed Dr. Cottrell's letter to me dated December 18, 1996, to have unequivocally offered that.
>
> * * *
>
> Contract terms sufficiently important to me to have caused me to be unwilling to relocate to the Tri-Cities, if not offered by A&PC, were those contained in Dr. Cottrell's December 18, 1996, letter. *Letter is defined to exclude the preprinted contract enclosure that accompanied it.* I viewed the terms **[*24]** of that form as talking points and negotiable. (Emphasis added).

Dr. Gardner's testimony at trial about the alleged contract is nearly as obfuscated as the affidavit testimony above. But what *is* clear is that his effort to prove the existence of an employment contract has consisted of latching on to every piece of correspondence that remotely suggests the concept of a two-year employment term, alleging that the parties reached "a meeting of the minds" as regards that term, and recognizing that most every other term was still being negotiated. This is clearly shown by the italicized portion of the affidavit above defining "letter" as the cover letter only, and disregarding the attached and included twelve-page contract form sent by Dr. Cottrell on December 18, 1996.

Based on Dr. Gardner's testimony, and the correspondence between the parties included in the record and reproduced in Section I above, we are of the opinion that the trial court was correct in determining that, taking the strongest legitimate view of the evidence in Dr. Gardner's favor, reasonable minds could only reach the conclusion that there was no contractual agreement between the parties for a two-year term **[*25]** of employment. The correspondence from A&PC was unequivocal in either including a thirty-day termination term in any offer, or stating that negotiations would continue. The trial court did not err in granting A&PC a directed verdict on the contract claim.

*V. Jury Verdict: Promissory Fraud*

The jury returned a verdict in favor of A&PC on Dr. Gardner's claim of promissory fraud. *HN9* The standard of appellate review when reviewing a jury verdict approved by a trial court is whether there is any material evidence to support the verdict. Tenn. R. App. P., Rule 13(d); *Barnes v. Goodyear Tire and Rubber Co.,* 48 S.W.3d 698, 704 (Tenn.2000). Dr. Gardner argues on appeal that there is no material evidence supporting the jury verdict. We disagree.

*HN10* To prove a claim based on promissory fraud the claimant must show that the alleged misrepresentation embodies "a promise of future action without the present intention to carry out the promise." *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. App.1990). We find ample material evidence in the record supporting the conclusion that Dr. Cottrell did not have the intention not to carry out any promises he may have **[*26]** made, if indeed he made any. Such evidence includes Dr. Cottrell's own testimony to precisely that effect. The jury was at liberty to believe Dr. Cottrell on this point, and apparently it did. We affirm the jury verdict in A&PC's favor.

## VI. Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed in its entirety. Costs on appeal are assessed to the Appellant, Dr. Alan Gardner, for which execution may issue, if necessary.

SHARON G. LEE, JUDGE

Service: **Get by LEXSEE®**
Citation: **2004 Tenn. App. LEXIS 813**
View: Full
Date/Time: Thursday, July 21, 2005 - 11:54 AM EDT

About LexisNexis | Terms and Conditions

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.