Tab 4

JAMES RIVER-PENNINGTON INC., Plaintiff and Counter-Defendant, v. CRSS CAPITAL, INC., et al., Defendants. CRSS CAPITAL, INC., CAPITAL NAHEOLA COGENERATORS, INC. and CAPITAL NAHEOLA LIMITED PARTNERSHIP, Counter-Plaintiffs, v. JAMES RIVER CORPORATION, MICHAEL J. ALLAN, H. WILLIAM STERRITT and BENJAMIN A. THORPE, Counter-Defendants.

C.A. No. 13870

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

1995 Del. Ch. LEXIS 22

February 9, 1995, Submitted
March 6, 1995, Decided

**SUBSEQUENT HISTORY: [*1]**

Released for Publication by the Court March 13, 1995.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff/counter-defendant chemical company (company) filed an action against defendant/counter-plaintiff limited partners, defendant/counter-defendant board members, and defendants, general partner and partnership, seeking a declaratory judgment regarding the enforceability of a call provision. The limited partners filed a counterclaim against the company and the board members. The two latter parties filed a motion to dismiss the counterclaim.

**OVERVIEW:** A partnership was formed for purposes of financing a chemical recovery facility owned by the company. The limited partners, the general partner, and the company were parties to an agreement that included a call provision giving the company the right to buy out the interests of any partners or any holder of interest in the partnership. The court denied the motion to dismiss in part. The limited partners stated claims for which relief may be granted for reformation and misrepresentation. Parol evidence was admissible in proving the reformation claim under the fraud/mistake exception. The limited partners pled fraud and mistake in accordance with the requirements of Del. Ch. Ct. R. 9(b). The breach of contract claim did not state a claim for which relief may be granted because parol evidence of prior antecedent agreements was inadmissible to prove the company's alleged breach. Therefore, the motion to dismiss was granted as to breach of contract claim. The court reserved decision on the motion to dismiss regarding the breach of fiduciary duty claims. Before the court could analyze the nature of the company's fiduciary duty, it was obligated to determine the parties' actual agreement.

**OUTCOME:** The motion to dismiss the counterclaim regarding the breach of contract claim was granted for failure to state a claim for which relief may be granted. The court reserved decision on the motion to dismiss regarding the counterclaim's breach of fiduciary duty claims. The motion to dismiss the counterclaim in other respects was denied. The motion to strike affirmative defenses with regard to the counterclaim was granted in part and denied in part.

**CORE TERMS:** partnership, reformation, partner, misrepresentation, valuation, partnership agreement, counterclaim, parol evidence, parol evidence rule, fiduciary duty, oral agreement, breach of contract, actual agreement, fiduciary duties, mutual mistake, unambiguous, unilateral mistake, plead, motion to dismiss, particularity, financing, breach of fiduciary duty, extrinsic evidence, modification, formula, loyalty, generalized, silence, contractual language, constituting

**LexisNexis(TM) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Failure to State a Cause of Action*

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*

[HN1]On a motion to dismiss for failure to state a claim upon which relief can be granted, the court considers only those matters referred to in the pleadings. The court will consider all well-plead facts to be true and draw all inferences in the light most favorable to the nonmoving party. Conclusory allegations will not be accepted as true. A complaint will not be dismissed unless it appears to a reasonable degree of certainty the plaintiff would not be entitled to relief under any set of facts which could be proved in support of his claim.

*Contracts Law > Defenses > Fraud & Misrepresentation*

*Contracts Law > Defenses > Ambiguity & Mistake*

Case 3:05-cv-00275    Document 38-5    Filed 07/22/05    Page 2 of 12 PageID #: 587

*Contracts Law > Contract Interpretation > Parol Evidence Rule*

[HN2]A trial court may not consider parol evidence when interpreting a clear and unambiguous contract. If the instrument is clear and unambiguous on its face, neither the Delaware Supreme Court nor the trial court may consider parol evidence to interpret it or search for the parties' intentions. Where the parties have made a contract and have expressed it in writing to which they both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understanding and negotiations will not be admitted for the purpose of varying or contradicting the writing. Parol evidence is admissible to prove fraud or mistake. The parole evidence rule does not apply to a contract where, because of fraud or mistake, the parties did not assent to a certain writing or writing as the agreement between the parties.

*Contracts Law > Defenses > Fraud & Misrepresentation*

*Contracts Law > Remedies > Reformation*

*Contracts Law > Defenses > Ambiguity & Mistake*

[HN3]The court may reform a document to make it conform to the original intent of the parties. Reformation is appropriate only when the contract does not represent the parties' intent because of fraud, mutual mistake or, in exceptional cases, a unilateral mistake coupled with the other parties' knowing silence. A unilateral mistake cannot alone form the basis for reformation. The party attempting to reform the contract must also prove the contents of the parties' actual agreement by clear and convincing evidence.

*Contracts Law > Contract Interpretation > Parol Evidence Rule*

[HN4]The "mistake" exceptions to the parole evidence rule are to be applied only where one party is mistaken with respect to the meaning of some material provisions of the signed contract. When the mistake of one party, with respect to the meaning of some material provision of the signed contract, is accompanied by the other party's knowledge thereof, but, also, by his silence, it is said to be equivalent of mutual mistake.

*Contracts Law > Defenses > Fraud & Misrepresentation*

*Contracts Law > Remedies > Reformation*

*Contracts Law > Defenses > Ambiguity & Mistake*

[HN5]Reformation is granted only where there is a mutual mistake. However, there are exceptions made to these general rules in cases where the mistake of one party is known to the other party and the mistake concerns a matter so vital that it can be said that the parties, because of miscalculation or false information never actually agreed to the same proposition. Reformation is an equitable right, and when it would be inequitable to enforce a contract, reformation should be available as a remedy. Parol evidence may be used by a party to establish fraud or mistake in support of a claim for reformation.

*Contracts Law > Defenses > Fraud & Misrepresentation*

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements*

*Contracts Law > Defenses > Ambiguity & Mistake*

[HN6]Del. Ch. Ct. R. 9(b) requires the party claiming fraud or mistake to plead the circumstances constituting fraud or mistake with particularity. This pleading requirement extends to the grounds underlying a claim for reformation -- namely, the facts, which would constitute fraud or mistake. Rule 9(b) requires the pleading to inform the opposing party of the precise transaction at issue and the fraud or mistake alleged to have occurred in the transaction so as to notify the opposing party of its precise alleged misconduct.

*Contracts Law > Defenses > Fraud & Misrepresentation*

[HN7]The five elements of common law fraud are as follows: (1) a false representation, usually one of fact, made by the defendant; (2) knowledge or belief the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce action or no action; (4) action or inaction taken in justifiable reliance upon the representation; and (5) damage to the claimant as a result of such reliance.

*Contracts Law > Defenses > Ambiguity & Mistake*

[HN8]A mutual mistake occurs where both parties have a misconception regarding a material term in the contract.

*Business & Corporate Entities > General Partnerships > Management Duties & Liabilities*

[HN9]See Del. Code Ann. tit. 6, § 17-1101(c), (d).

**COUNSEL:** Stephen P. Jenkins, Richard B. Heins and Christopher S. Sontchi of ASHBY & GEDDES, Wilmington, Delaware. Attorneys for Plaintiff and Counterclaim-Defendants.

Richard P. Swanson and Christopher Connolly of REID & PRIEST, New York, New York; Michael J.

Zimmer and Timothy M. Murphy of REID & PRIEST, Washington, D.C. Of Counsel.

Wayne N. Elliott and Ronald A. Brown, Jr. of PRICKETT, JONES, ELLIOTT, KRISTOL & SCHNEE, Wilmington, Delaware. Attorneys for Defendants and Counter-Plaintiffs.

Robert P. Fletcher and Robert C. Bernius of NIXON, HARGRAVE, DEVANS & DOYLE, Washington, D.C. Of Counsel.

**JUDGES:** Myron T. Steele, Vice-Chancellor

**OPINIONBY:** Myron T. Steele

**OPINION:** *MEMORANDUM OPINION*

STEELE, Vice-Chancellor

This action arises from plaintiff James River-Pennington, Inc.'s ("JRP") attempt to exercise an option to purchase defendant CRSS Capital, Inc.'s ("CRSS") one-half interest in a resource recovery and co-generation plant. JRP filed suit against CRSS, Naheola Cogeneration, Inc. ("NCI"). Capital Naheola Cogenerators, Inc. ("Capital, Inc."), Capital Naheola Limited Partnership ("CRSS LP"), Naheola Cogeneration Limited Partnership ("the Partnership"), [*2] and the three members of NCI's Board of Directors named by CRSS. Defendants CRSS, Capital, Inc., and Capital, L.P. (collectively, "Counter-Plaintiffs") filed a four-count counterclaim against JRP, James River Corporation ("JRC"), and the three members of NCI's Board of Directors named by JRP (collectively, "Counter-Defendants") on December 12, 1994. For ease of reference, I will refer to the Counter-Plaintiffs as CRSS, and the Counter-Defendants as JRP.

The Counter-Defendants filed a motion to dismiss the counterclaim for failure to state a claim upon which relief could be granted. This is the decision on the motion to dismiss.

## I. BACKGROUND

At this stage, the Court must consider all well-plead facts in the counterclaim as true.

### A. The Formation of the Partnership

In 1989, JRC approached CRSS and other firms concerning their ability to finance a chemical recovery and cogeneration facility ("the Facility") located at JRP's Naheola Mill in Pennington, Alabama ("the Mill"). JRC wanted the facility to provide steam, compressed air and electricity to the Mill and process black liquor solids, a byproduct of the Mill's pulp production process. JRC selected CRSS to be its partner [*3] because CRSS offered innovative financing techniques.

In 1990, the parties entered into a series of preliminary agreements initiating the financing and development of the Facility. Neither the Complaint nor the Counterclaim make the terms of these preliminary agreements clear.

On March 14, 1991, the transaction for the financing, construction and operation of the Facility closed. At the closing, the parties created final agreements, including the Partnership Agreement, the First Amended and Restated Principal's (sic) Agreement ("Principal's Agreement"), an Energy Sales and Services Agreement ("Energy Agreement") and an Operations and Maintenance Agreement ("Operations Agreement").

Pursuant to the Partnership Agreement, CRSS LP, JRP and NCI own the Partnership. NCI is the Partnership's general partner, and CRSS LP and JRP are limited partners. Under the Energy Agreement, JRP pays the Partnership for processing black liquor solids and producing energy for the Mill. JRP operates and maintains the Facility at the expense of the Partnership pursuant to the Operations Agreement.

The Principal's Agreement states the rights and restrictions regarding the Partnership's ownership interests [*4] and the management of NCI. JRP, CRSS, NCI, CRSS LP and Capital, Inc. are all parties to the Principal's Agreement.

The Principal's Agreement includes the following "Call" provision:
(b) JRP shall have the right (the "Call"), which it shall exercise by giving notice of such exercise to CRSS at any time during the Call Exercise Period, to buy from each other Shareholder and Partner or holder of any interest in the Call Block, and, upon the exercise of such right each such other Shareholder, Partner or interest holder shall have the obligation to sell to JRP, the Call Block at the price equal to the Call Amount.
(Principal's Agreement at § 5.1.) The Principal's Agreement also contains the following integration clause:

> Supplemental Provision No. 3 -- Entire Agreement. Such document (including all appendices and exhibits thereto), constitutes the entire agreement and understanding of the parties thereto with respect to the subject matter thereof and supersedes all prior written and oral agreements and understandings with respect to such subject manner.

(Principal's Agreement at Appendix A.) n1 JRP made representations before the closing that JRP would only exercise the [*5] call in two specific circumstances: (1) JRP terminating the Partnership by obtaining control over CRSS's Partnership interest for itself; or (2) JRP selling all ownership interests in the Mill to a third party. To facilitate selling all ownership interests to a third party, the Principal's Agreement also gives JRP the right to assign the Call.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n1 This integration use is expressly incorporated into the Principal's Agreement through Section 9.1, which states: "Unless otherwise specifically provided in this Agreement, the Supplemental Provisions set forth in Appendix A shall govern this Agreement." (Principal's Agreement at § 9.1.)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Schedule II to the Principal's Agreement sets forth a specific formula for calculating the amount JRP must pay CRSS for its Partnership interest if JRP exercises the Call. Although not written into the Schedule II formula, JRP and CRSS agreed the purchase price would result in JRP paying CRSS fair value for CRSS's Partnership interest.

In sum, CRSS alleges the Principal's Agreement does not [*6] accurately reflect the parties' agreement, because: (1) the Principal's Agreement does not reflect the limited circumstances when JRP can exercise the Call; (2) the Principal's Agreement erroneously defines a date for measuring future Partnership financial performance as a "Scheduled Option Closing Date" in Schedule II; (3) the Principal's Agreement incorrectly uses after-tax distributions as the basis for the valuation instead of pre-tax distributions; and (4) the Principal's Agreement fails to specify the applicable discount rate used for the Call valuation. (Counterclaim at P 29.)

In March 1993, the Facility began operations. The Facility immediately increased the Mill's output. The Facility is now performing better than anticipated, helping the Mill set new production records.

**B. The Events Leading To JRP's Exercise of the Call**

In March 1994, the Partnership had accumulated $ 18.2 million in initial excess cash flow. Under the existing financing structure, the Partnership would have to pay the lenders $ 9.1 million -- one half of the accumulated initial excess cash flow as a prepayment of debt. CRSS proposed the Partnership explore a modification to the financing documents, [*7] eliminating the $ 9.1 million prepayment to the lenders. Under CRSS's proposal, this money would be distributed to the partners. JRP agreed to allow the Partnership to explore CRSS's proposal. Over the next six months, CRSS negotiated with lenders on behalf of the Partnership and obtained their approval to the proposed modifications. The lenders demanded the inclusion of a "clawback" provision which would require the partners to repay the $ 9.1 million if the debt coverage ratio for the Facility fell below 1:1.25 within the two year period following the distribution.

JRC also carried a sizeable corporate debt in 1994. CRSS recognized JRC's capital needs as well as its own desire to increase CRSS's cogeneration business. Consequently, CRSS decided to offer to purchase JRP's Partnership interest in June 1994. On August 22, 1994, JRP sent a proposal to CRSS requesting CRSS restructure the Partnership agreements by: (1) immediately paying JRP $ 16.8 million in cash; and (2) agreeing to a modification of the Energy Agreement which would provide JRP with a 6.73% discount on fees owed to the Partnership. The 6.73% discount, if approved, would shift approximately two million dollars from [*8] the Partnership to JRP. JRP stated if CRSS did not agree to restructure the Partnership according to JRP's request, JRP would begin active efforts to market CRSS's interest.

At the same time as JRP's restructuring request, JRP asked Merrill Lynch & Co. ("Merrill Lynch") to estimate CRSS' Partnership interest's value if sold to a third party on the open market. Merrill Lynch performed an estimate of the CRSS's Partnership interest and prepared an Offering Memorandum, soliciting proposals from potential investors. JRC and JRP distributed the Offering Memorandum to third parties, including CRSS's potential competitors. The Offering Memorandum did not indicate a potential investor would have to agree to the two modifications JRP requested in its August 22, 1994 letter.

CRSS amended its June offer in October 1994, offering to purchase JRP's interest for $ 50.7 million plus 50% of the cash available for Partnership distribution as of December 31, 1994. JRP rejected CRSS's second offer.

On November 4, 1994, JRP notified CRSS it would exercise the Call provision in the Partnership Agreement.

**C. JRP's Actions To Allegedly Coerce CRSS into Complying With The Call**

On November 3, 1994, the **[\*9]** JRP Directors refused to consent to CRSS's proposed modifications to the financing documents, citing JRP's opposition to the clawback provision. JRP also delayed Partnership cash distributions in the third quarter of 1994, allowing over $ 23 million to accumulate in the Partnership. CRSS alleges JRP intentionally refused to act and delayed in order to exert economic pressure on CRSS. CRSS also alleges JRP's refusal increased the resale value of CRSS's Partnership interest by trapping large amounts of cash in the Partnership.

On November 9, 1994, three business days after JRP gave notice it was attempting to exercise the Call, JRP filed this litigation seeking a declaratory judgment regarding the enforceability of the Call provision before CRSS responded to JRP's exercise of the Call. CRSS alleges JRP instituted this litigation to coerce CRSS's acquiescence to JRP's exercise of the Call.

### D. The Valuation of the Call

On December 4, 1994, JRP produced its valuation of CRSS's Partnership interest, purportedly according to the Schedule II valuation formula. JRP valued CRSS's interest at $ 30.54 million. CRSS alleges JRP's valuation does not comply with the proper formula for valuing **[\*10]** the Partnership interests and is based on erroneous, misleading or incomplete information.

After JRP produced its valuation, the JRP Directors conceded they would accept a valuation unilaterally prepared by CRSS. On December 5, 1994, CRSS produced a valuation of its interests at a minimum of $ 37.465 million, subject to errors in the Schedule II formula. CRSS claims its valuation is not based on all relevant information because JRP refused to disclose information regarding Mill operations. CRSS reserved its right to produce a revised valuation based on all relevant information. As of the date of the Counterclaim, JRP had not produced the relevant information.

### II. CONTENTIONS OF THE PARTIES

JRP argues CRSS's claims that alleged antecedent oral agreements and JRP's fiduciary duties preclude JRP from exercising the Call fail as a matter of law. JRP argues the parties' written agreements reflect the parties' actual agreements. JRP argues the unrestricted Call provision reflects the appropriate business relationship between the parties because JRP came to the table in a stronger bargaining position. JRP contends alleged oral agreements could not preclude the exercise of a contractual **[\*11]** right in a clear and unambiguous later integrated written contract. JRP also argues fiduciary duties do not prevent a party from exercising a right to act consistently with one's own self-interest when the parties clearly bargain for and

expressly sanction the arguably self-interested action in a Partnership Agreement.

CRSS asserts JRP's right to exercise the Call is subject to a fiduciary duty of loyalty to its partner and to a common law duty of good faith and fair dealing. CRSS contends although the fiduciary duties may be modified by contract, the party asserting the right must rely on the contractual provision in good faith. CRSS also contends the written Principal's Agreement, including the so-called safe harbor to act self-interestedly, does not reflect the parties true agreement due to either mutual mistake or misrepresentation. CRSS claims the latter allegations form a clear basis requiring the Court to reform the contract to reflect the alleged prior oral agreements.

### III. LEGAL STANDARD

**[HN1]**On a motion to dismiss for failure to state a claim upon which relief can be granted, the Court considers only those matters referred to in the pleadings. _Hart Holding v. Drexel Burnham Lambert, Del. Ch., 593 A.2d 535, 538 (1991)._ **[\*12]** The Court will consider all well-plead facts to be true and draw all inferences in the light most favorable to the nonmoving party. _Grobow v. Perot, Del. Supr., 539 A.2d 180, 187 n.6 (1988)._ Conclusory allegations will not be accepted as true. _Id._ A complaint will not be dismissed unless it appears to a reasonable degree of certainty the plaintiff would not be entitled to relief under any set of facts which could be proved in support of his claim. _Rabkin v. Philip A. Hunt Chem. Corp., Del. Supr., 498 A.2d 1099, 1104 (1985); In re USACafes, L.P. Litig., Del. Ch., 600 A.2d 43, 47 (1991)._

### IV. BREACH OF CONTRACT

CRSS alleges JRP's actions constitute breaches of the Partnership Agreement and the Principal's Agreement, including, but not limited to, breaches of the "duty of good faith and fair dealing."

JRP argues CRSS is prohibited from altering the clear unambiguous language of the integrated contract with an antecedent oral agreement. JRP argues the parol evidence rule bars the use of the alleged oral agreement to add conditions limiting JRP's right to exercise the Call and add terms **[\*13]** concerning the valuation of the Call amount. JRP argues, therefore, CRSS's breach of contract count fails to state a claim for which relief can be granted.

### A. The Parol Evidence Rule Does Preclude an Examination of Extrinsic Evidence.

CRSS argues the parol evidence rule does not preclude an examination of extrinsic evidence to determine the meaning of the Partnership Agreement. CRSS

Case 3:05-cv-00275    Document 38-5    Filed 07/22/05    Page 6 of 12 PageID #: 591

contends parol evidence may be used to force interpretation of the Call language in accordance with its version of the agreement of the parties.

The Principal's Agreement, by its very terms, is an integrated contract, constituting the entire agreement between the parties. (Principal's Agreement at Appendix A.) The parties bargained for the contractual language eventually included in the agreement. The parties both profit from the agreement. The provision at issue here, by its clear and explicit terms, states JRP has the right to purchase CRSS's interest for a specific price. The Call provision's text also clearly states CRSS must sell its Partnership interest to JRP when JRP exercises its right. This provision is clear and unambiguous.

CRSS argues *Klair v. Reese,* Del. Supr., 531 A.2d 219 (1987) **[*14]** stands for the proposition that this Court must consider parol evidence even when interpreting a clear agreement.

Although *Klair* may appear to support that proposition, subsequent case law has clarified Delaware law - [HN2]a trial court may not consider parol evidence when interpreting a clear and unambiguous contract. *AOC Limited Partnership v. Horsham Corporation,* Del. Ch., C.A. No. 12480, Chandler, V.C. (June 17, 1992) Mem. Op. at 15; *Pellaton v. Bank of New York,* Del. Supr., 592 A.2d 473, 478 (1991).

The Delaware Supreme Court's most recent pronouncements as to whether a court should consider extrinsic evidence when presented with unambiguous contractual terms have been clear and consistent: "If the instrument is clear and unambiguous on its face, neither [the Delaware Supreme Court] nor the trial court may consider parol evidence 'to interpret it or search for the parties' intentions . . . .'" *Pellaton,* 592 A.2d at 478 (quoting *Hibbert v. Hollywood Park, Inc.* Del. Supr., 457 A.2d 339, 343 (1983)). Furthermore, "where the parties have made a contract and have expressed it in writing **[*15]** to which they both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understanding and negotiations will not be admitted for the purpose of varying or contradicting the writing." *Scott v. Land Lords, Inc.,* Del. Supr., No. 34, 1992, Moore, J. (Sep. 22, 1992) (Order) at 6, (quoting *Scott - Douglas Corp. v. Greyhound Corp.,* Del. Super., 304 A.2d 309, 315 (1973)) n2. Based on Delaware Supreme Court precedent, I may not use extrinsic evidence to interpret clear and unambiguous contractual language. Consequently, I will not use prior antecedent agreements to interpret or contradict the clear language of the disputed provisions.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Although the Superior Court applied Michigan law to the contract dispute in this case, the same principle applies in Delaware.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## B. The Bad Faith Exception to the Parol Evidence Rule Does Not Apply

Alternatively, CRSS argues a parol evidence rule exception applies for parties attempting to **[*16]** prove a breach of contract based upon bad faith. Under this theory, evidence of the prior oral agreements would not be used to contradict the terms of the Principal's Agreement; instead, the evidence shows JRP demonstrated bad faith by acting in a manner inconsistent with the prior oral agreement thereby breaching the contract.

Parol evidence is admissible to prove fraud or mistake. *American Home Prods. Corp. v. Norden Lab., Inc.,* Del. Ch., C.A. No. 11615, Hartnett, V.C. (July 24, 1991) Mem. Op. at 9; *New Castle County v. Crescenzo,* Del. Ch., C.A. No. 7082, Hartnett, V.C. (Feb. 11, 1985) Mem. Op. at 7 (citing *Scott - Douglas, 304 A.2d at 317),* aff'd, Del. Supr., 505 A.2d 454 (1985); 4 Walter H. E. Jaeger, Williston on Contracts § 634, at 1017-18 (3d ed. 1970). This exception's rationale is that the parties, because of either fraud or mistake, did not assent to a certain writing or writings as the agreement between the parties; therefore, the parol evidence rule does not apply to the contract. 4 Williston on Contracts § 634, at 1017-18. CRSS does not assert under this Count, however, that JRP breached the **[*17]** clear language of the contract in bad faith making the contract itself invalid. They argue JRP acted in bad faith by exercising the Call in a manner inconsistent with the prior oral agreement. The usual rationale behind the fraud/mistake exception to the parol evidence rule does not apply here. CRSS seeks to prevent enforcement of the contract as JRP interprets it and seeks construction of the Call and valuation as CRSS interprets the provisions. The parol evidence rule bars admission of the extrinsic evidence for the purposes of advancing one's own interpretation of language that is otherwise clear. The counterclaim's allegation of bad faith is a claim for reformation cloaked as a bad faith breach of contract count. CRSS seeks to substitute its version of the agreement of the parties for the one appearing in the written document in the interest of justice. Therefore, I find evidence of the prior oral agreement is not admissible to support

Page 6

CRSS's breach of contract claim. Without the inadmissible parol evidence the breach of contract count is merely conclusionary and must be dismissed.

## V. REFORMATION

CRSS alleges because of a mutual mistake, or because of JRP's misrepresentations, **[*18]** the Principal's Agreement fails to reflect the actual agreement of the parties. CRSS asserts the Principal's Agreement has four deficiencies: (1) the Principal's Agreement does not state the two limited circumstances when JRP can exercise the Call agreed to by the parties: (2) the Principal's Agreement erroneously defines a date for measuring future Partnership financial performance as a 'Scheduled Option Closing Date" in Schedule II; (3) the Principal's Agreement incorrectly uses after-tax distributions as the basis for the valuation instead of pre-tax distributions; and (4) the Principal's Agreement fails to specify the applicable discount rate used for the Call valuation.

CRSS argues it has properly stated a claim for reformation because a court of equity will reform a contract when the contract does not reflect the parties' actual agreement. CRSS contends it has adequately plead the contents of the parties' actual agreement, JRP's misrepresentation, and JRP's knowledge of CRSS's mistake. CRSS also argues reformation cases are fact intensive, and thus, reformation claims should not be dismissed on the pleadings.

JRP argues CRSS is not entitled to reformation because an alleged **[*19]** "bad bargain" does not entitle the contracting party to reformation. JRP also argues the plain terms of the contract cannot be varied with parol evidence of a previous oral agreement. Finally, JRP argues the Counterclaim fails to plead with particularity allegations supporting a claim for reformation.

[HN3]The Court of Chancery may reform a document to make it conform to the original intent of the parties. *Waggoner v. Laster,* Del. Supr., 581 A.2d 1127, 1135 (1990). Reformation is appropriate only when the contract does not represent the parties' intent because of fraud, mutual mistake or, in exceptional cases, a unilateral mistake coupled with the other parties' knowing silence. *AOC, supra,* at 15-16; *see Collins v. Burke,* Del. Supr., 418 A.2d 999, 1002 (1980); *Tom Savage Assocs., Inc. v. Woodbridge School District,* Del. Ch., C.A. No. 11863, Berger, V.C. (Apr. 20, 1994) Mem. Op. at 4-5. A unilateral mistake cannot alone form the basis for reformation. *Matter of ENSTAR Corp.,* Del. Supr., 604 A.2d 404, 413 (1992). The party attempting to reform the contract must also prove the contents of the **[*20]** parties' actual

agreement by clear and convincing evidence. *Collins,* 418 A.2d at 1002; *AOC, supra,* at 16.

### A. Parol Evidence May Be Used To Prove Reformation Claim

JRP's contends CRSS cannot use parol evidence to prove its reformation claim even where, as here. CRSS alleges the contract does not represent the parties' intent because of misrepresentation or unilateral mistake coupled with JRP's knowing silence. JRP's contention is based on the premise the fraud/mistake exception to the parol evidence rule only applies when a party is mistaken regarding the meaning of a material contract provision.

In support of its argument, JRP states: "this Court has long held that [HN4]the 'mistake' exceptions to which CRSS clings are to be applied only where one party is mistaken 'with respect to the *meaning* of some material provisons of the signed contract.'" (Reply Brief at 22 (quoting *Colvocoresses v. W.S. Wasserman Co.,* Del. Ch., 26 Del. Ch. 333, 28 A.2d 588, 589 (1928)).

The section of the *Colvocoresses* opinion JRP relies upon reads in full:
But when the mistake of one party, with respect to the meaning **[*21]** of some material provision of the signed contract, is accompanied by the other party's knowledge thereof, but, also, by his silence, it is said to be equivalent of mutual mistake.
*Id.* This language is found in the section of the opinion stating when reformation is generally available. *See id.* It is obvious, after looking at the placement of the quotation and the language of the quotation itself, this quotation does not deal with the fraud/mistake exception to the parol evidence rule. Instead, this language states reformation is available as a remedy when a party makes a unilateral mistake and another party is knowingly silent.

JRP's assertion, while not implicating the parol evidence rule, does raise the question whether reformation claims based upon unilateral mistake coupled with knowing silence are limited to an error concerning a meaning of a term. This Court has stated the rule as follows: "knowledge by one party of the other's mistake regarding the expression of the contract is equivalent to a mutual mistake." *Tom Savage, supra,* at 4 (quoting 13 Williston on Contracts § 1573). This statement of the rule does not limit reformation in unilateral mistake cases **[*22]** to a mistake concerning the meaning of a material term. Furthermore, the rationale behind allowing reformation in unilateral mistake cases supports reformation when a party is unilaterally mistaken concerning the content of a contract. Williston states the equitable underpinnings of this rule:

[HN5]

> Reformation . . . is granted only where there is a mutual mistake. However, there are exceptions made to these general rules in cases where the mistake of one party is . . . known to the other party . . . and the mistake concerns a matter so vital that it can be said that the parties, because of miscalculation or false information never actually agreed to the same proposition.

*Tom Savage, supra,* at 4 (quoting 13 Williston on Contracts § 1548 at 126) (alteration in original). Reformation is an equitable right, and when it would be inequitable to enforce a contract, reformation should be available as a remedy. Obviously, this includes when a party is mistaken about the contents of the contract and the other party, despite knowing of the mistake, intentionally remains silent.

Although parol evidence may not be used to interpret clear and unambiguous contractual language to support [*23] enforcement of a contrary interpretation of a contract, JRP's argument ignores the fact parol evidence may be used by a party to establish fraud or mistake in support of a claim for reformation. 13 Williston on Contracts § 1552, at 210-11; *see American Home, supra,* at 9; *Scott - Douglas,* 304 A.2d at 317; *see also* Restatement (Second) of Contracts § 214(d) (1981). Williston states the rationale behind the use of parol evidence to prove a reformation claim:

> It should not be denied that the writing correctly states the actual contract or conveyance which has been made, but since it is inequitable to allow the enforcement of it, and, since justice requires the substitution of another in its place, equity gives relief, where reformation is appropriate, and to that end, generally and necessarily admits any relevant parol or other extrinsic evidence.

13 Williston on Contracts § 1552, at 213-14. The fraud/mistake exception to the parol evidence rule within the context of a claim for reformation is well settled. Therefore, I find parol evidence is admissible for the purpose of proving CRSS's reformation claim.

## B. CRSS Has Plead Fraud [*24] And Mistake With Particularity

JRP seeks to dismiss CRSS's reformation count because CRSS failed to plead mutual mistake or misrepresentation with particularity. [HN6]Chancery Court Rule 9(b) requires the party claiming fraud or mistake to plead the circumstances constituting fraud or mistake with particularity.n3 This pleading requirement extends to the grounds underlying a claim for reformation -- namely, the facts which would constitute fraud or mistake. *Gracelawn Memorial Park, Inc. v. Eastern Memorial Consultants, Inc.,* Del. Supr., 291 A.2d 276, 276 (1972). Rule 9(b) requires the pleading to inform the opposing party of the precise transaction at issue and the fraud or mistake alleged to have occurred in the transaction so as to notify the opposing party of its precise alleged misconduct. *Kahn Brothers & Co., Inc. v. Fischbach Corp.,* Del. Ch., C.A. No. 8987, Allen, C. (Sep. 19, 1989) Mem. Op. and Order at 11. CRSS has alleged both fraud and mistake; both must meet Rule 9(b)'s level of specificity in the pleading.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n3 Court of Chancery Rule 9(b) states:
**(b) Fraud, Mistake, Condition of the Mind.** In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

[*25] [HN7]

The five elements of common law fraud are well-settled:

> (1) a false representation, usually one of fact, made by the defendant;

> (2) knowledge or belief the representation was false, or was made with reckless indifference to the truth;

> (3) an intent to induce action or no action;

> (4) action or inaction taken in justifiable reliance upon the representation; and

> (5) damage to the claimant as a result of such reliance.

*Gaffin v. Teledyne, Inc.,* Del. Supr., 611 A.2d 467, 472 (1992). CRSS alleges JRP made a false representation by affirmatively representing the Call valuation would be equal to fair market value and it would only exercise the Call in two limited circumstances. CRSS alleges JRP knew the written Principal's Agreement

differed from the alleged prior agreement and, nevertheless JRP now attempts to enforce the Call exactly as written. CRSS alleges JRP's earlier oral representations were made to induce CRSS to enter into the Agreement, because JRP knew CRSS would not have consented to the Principal's Agreement without assuming the limitations still applied to the Call. CRSS alleges it justifiably relied upon JRP's prior oral representations **[*26]** when it agreed to the Principal's Agreement. CRSS alleged it has been injured because it will lose millions of dollars if JRP is allowed to exercise the Call in a manner consistent with the written agreement. Through CRSS's allegations, CRSS has placed JRP on notice as to the precise transaction and the alleged misrepresentations. CRSS's allegations concerning fraud are sufficient to meet the requirements of Rule 9(b).

Generally, [HN8]a mutual mistake occurs where both parties have a misconception regarding a material term in the contract. *Amer v. NVF Co.,* Del. Ch., C.A. No. 11812, Allen, C. (Jun. 15, 1994) Mem. Op. at 16. CRSS alleges the Principal's Agreement did not accurately express the terms of the agreement between the parties. CRSS has specifically alleged four inconsistencies between the written agreement and the prior oral agreement. Although the distinct and clear inconsistency between the earlier alleged oral agreements and the written contract executed by sophisticated commercial entities may suggest difficulty in proving mistake in the crucible of trial, CRSS's allegations must be considered true for the purposes of a motion to dismiss. They are sufficient to meet the **[*27]** requirements of Rule 9(b). See *American Home, supra.* at 13.

CRSS has plead facts sufficient to state a claim for reformation. Therefore, I must deny JRP's Motion to Dismiss CRSS's reformation count.

## VI. MISREPRESENTATION

CRSS pleads two categories of claims of fraud based upon JRP's alleged misrepresentations in an effort to establish a breach of the Partnership Agreement.

First, CRSS alleges Article 3, Representations and Warranties, Subsection 3.11 of the Partnership Agreement:

To the best of such Partner's knowledge, after due inquiry, all factual information (taken as a whole) heretofore or contemporaneously furnished by or on behalf of the Partnership or such Partner does not contain any material misstatement or omit to state a material fact necessary to make the statements therein not misleading.

should be read to include all prior statements -- not just the validity of factual information furnished by the

Partners or the Partnership in accordance with Federal Securities Laws. In effect, CRSS says JRP's failure to include the terms of CRSS's claimed oral agreement about the Call and valuation of CRSS's interests in the written language of the contract or to recognize **[*28]** the earlier agreement in principle in its interpretation of the contractual terms of the Call violates this express warranty in the contract itself.

Frankly, section 3.11 of the Partnership Agreement speaks to "Securities Law Matters" and to factual information presumably furnished by the Partners and the Partnership in connection with their warranty their respective interests have not been acquired for the purpose of registration as investments under the Securities Act of 1953 -- not a general affirmation everything ever said or done in the parties' relationship was warranted under this section. CRSS's argument expanding this warranty far beyond the subject matter of this limited paragraph simply makes no sense. I conclude with absolute certainty CRSS would not be entitled to relief under any set of facts it could prove relying on this paragraph of the Agreement.

Second, independently of the Agreement's express warranties, CRSS alleges JRP failed to reveal, with the intent of deceiving CRSS, either: (1) JRP did not intend the Call could only be exercised in the two limited circumstances, or (2) JRP did not intend to agree upon the limitations of the Call.

While CRSS's claim of fraudulent **[*29]** breach of the specific paragraph cited in the Partnership Agreement appears clear, the second category of alleged misrepresentation confuses me. Paragraphs 109-115 of the Counterclaim appear to relate solely to Paragraph 3.11. There is, however, an oblique reference to the material misrepresentations and omissions of material fact breaching other unidentified provisions of the Partnership Agreement. CRSS's brief complicates the scenario by referring to a "general duty to refrain from defrauding its Partner "as a part of the discussion of the misrepresentation claim. No brief discusses what this duty means or the context within which it should be analyzed. Is this another version of common law fraud or a variation on the theme of breach of a fiduciary duty of loyalty? In any event, despite the language in the brief, there only are two actual claims stated in the misrepresentation Count: (1) Paragraph 3.11 discussed above; and, (2) a generalized claim that JRP materially misrepresented its intended position orally. CRSS allegedly relied to its detriment on these misrepresentations, and induced by the assurances contained within the oral misrepresentations, CRSS agreed to the Call provision **[*30]** explicitly stated in the Principal's Agreement. In my view, this is simply another way of asserting the actual agreement between

Page 9

the parties is CRSS's version and it should be substituted, by way of reformation, for the plain meaning of the Call and valuation provisions appearing in the actual text of the Principal's Agreement. The facts required to prove the generalized claim of misrepresentation are the same advanced in support of reformation and to the same end -- the Court should construe the disputed contractual language as we see it but not as it actually reads. By incorporating the earlier allegations of the counterclaim in this Count and by pleading inducement within this Count, CRSS has nonetheless plead with sufficient particularity a claim for common law misrepresentation. *See Gaffin,* 611 A.2d at 472. Though one might logically suspect reformation to be the real remedy sought by CRSS, I cannot say it fairly appears to a reasonable degree of certainty CRSS would not be entitled to relief under any set of facts offered in support of the generalized misrepresentation Count of the Counterclaim. The Motion to Dismiss Count IV is granted in regard [*31] to reliance upon § 3.11 of the Partnership Agreement and denied as to the more generalized common law claim of misrepresentation based upon the inconsistency of the alleged prior oral agreement and JRP's ultimate contrary interpretation of the plain language of the Call and valuation provisions.

## VII. BREACH OF FIDUCIARY DUTY

CRSS alleges JRC, JRP and the JRP Directors breached a fiduciary duty to CRSS and the Partnership to act in good faith and solely in the best interest of the Partnership by exercising the Call and taking actions attempting to coerce CRSS into complying with JRP's attempt to exercise the Call. CRSS also alleges JRP's attempt to exercise the Call standing alone constitutes self-dealing and bad faith.

CRSS argues JRP has fiduciary duties to CRSS and the Partnership under the Agreements and the Delaware Revised Uniform Limited Partnership Act. CRSS contends the central issue is whether JRP acted in "good faith" pursuant to Section 17-1001(d) of the Act. In essence, it appears CRSS reads "good faith" to mean more than a fair and reasonable reading of the right to act independently pursuant to contract. CRSS equates the phrase "good faith" here to mean the obverse [*32] of "bad faith" and characterizes it as a reaffirmation of the traditional duty of loyalty at common law. CRSS asserts good faith is an issue of fact, precluding dismissal at this stage.

JRC, JRP and the JRP Directors owe a fiduciary duty of loyalty to the Partnership and any other partner. JRP has a duty of loyalty to the Partnership and the other partner because it controls the general partner through the votes of its three of the six directors. *See KE Property Management Inc. v. 275 Madison*

*Management Corp.,* Del. Ch., C.A. No. 12683, Hartnett, V.C. (July 21, 1993) Mem. Op. at 24. The JRP Directors have fiduciary duties to the Partnership and its limited partners because they control the Partnership property. See *In re USACafes, L.P. Litig.,* Del. Ch., 600 A.2d 43, 49 (1991). If JRC knowingly participated in any JRP breach of fiduciary duty to the Partnership or other partners, JRC would also be liable with the primary wrongdoer for injuries resulting from the breach. Id. at 55.

JRP argues despite a general fiduciary duty of loyalty to the Partnership and the other limited partner to act in the best interests of the Partnership, [*33] that fiduciary duty may be modified by the grant of private contractual rights. JRP asserts JRP could not breach a fiduciary duty by exercising a private contractual right negotiated by two sophisticated parties at arms length. JRP argues Delaware law does not require JRP to sacrifice its own self interest in all circumstances, especially when a party acts on a clear and unambiguous contractual right. The tension exists here, of course, between a fiduciary's contractual sanction to act independently in its own best interests and the fiduciary's obligation to act in the best interests of the Partnership. The Delaware Revised Limited Partnership Act ("the Act") expressly recognizes partners may modify their fiduciary duties through contract. Section 17-1101 of the Act states, in pertinent part:

[HN9]

> (c) It is the *policy of* this chapter to give *maximum effect to the principle of freedom of contract* and to the enforceability of partnership agreements.
>
> (d) To the extent that, at law or in equity, a partner has duties *(including fiduciary duties)* and liabilities relating thereto to a limited partnership or to another partner, (1) any such partner acting under a partnership [*34] agreement shall not be liable to the limited partnership or to any such other partner for the partner's good faith reliance on the provisions of such partnership agreement, and (2) the partner's duties and liabilities may be expanded or restricted by provisions in a partnership agreement.

*6 Del. C. § 17-1101(d)* (emphasis added).n4 The central focus of the inquiry, necessarily, is whether the terms of the contract modify JRP's fiduciary duty of loyalty to the Partnership, the Limited Partnership and its limited Partner. To resolve this issue, I must first determine if the Principal's Agreement, as written, is the parties' agreement. Therefore, exercising my

discretion in this expedited proceeding, I will reserve decision on CRSS's breach of fiduciary duty claim until after trial.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

n4 It is irrelevant the Call provision is in the Principal's Agreement and not in the Partnership Agreement. The Principal's Agreement's sole purpose is devoted to the Partnership, including the transfer of Partnership interests. In essence, the Principal's Agreement is a derivative of the Partnership Agreement, and thus, the same standards apply to both.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

 [*35]

## VII. CRSS'S AFFIRMATIVE DEFENSES

JRP asks the Court to dismiss most of CRSS's Affirmative Defenses in this action because they are closely related to the Counterclaims. I will treat JRP's request as a Motion to Strike under Chancery Rule 12(f).

Under Rule 12(f), the inquiry is whether the challenged defense is legally sufficient, assuming the truth of the facts alleged in the answer. *See Holtzman v. Gruen Holding Corp.,* Del. Ch., C.A. No. 13500, Chandler, V.C. (Aug. 5, 1994) Letter Op. at 7. The following "affirmative defenses" are tied to the Counterclaim:
(1) Fourth Affirmative Defense: Bad faith;

(2) Fifth Affirmative Defense: Breaches of fiduciary duty;

(3) Seventh Affirmative Defense: Misrepresentation and omissions of material fact;

(4) Eighth Affirmative Defense: Breach of contract;

(5) Tenth Affirmative Defense: The written Principal's Agreement does not reflect the actual agreement of the parties concerning the Call.

A Count generally views an affirmative defense as a new matter constituting a defense offered under the assumption the Complaint is true but a legal defense exists to the Complaint's assertion. For reasons already stated in this opinion. **[*36]** CRSS's claims of reformation and misrepresentation survive JRP's motion to dismiss. The Seventh and the Tenth

Affirmative defenses have no legal significance as independent affirmative defenses. They are subsumed by the equitable defense of unclean hands and constitute the factual underpinning for the counterclaim's theory of reformation. They unnecessarily litter the legal landscape, offer no additional substantive legal defense and are stricken. I concluded earlier the breach of contract claim does not survive the Motion to Dismiss. Therefore, the Eighth Affirmative Defense necessarily is stricken. Since I have reserved decision on the breach of fiduciary duty claim, I reserve decision on CRSS's Fourth and Fifth Affirmative Defenses.

## VIII. CONCLUSION

CRSS and its related entities have stated claims for which relief may be granted for reformation and misrepresentation. Plaintiff's and Counter-Defendants' Motion to Dismiss is *denied* as to these two claims.

CRSS's breach of contract claim does not state a claim for which relief may be granted because parol evidence will be inadmissible to prove JRP's alleged breach. Therefore, Plaintiff's and Counter-Defendants' Motion to Dismiss **[*37]** is *granted* as to CRSS's breach of contract claim.

Before I can analyze the nature of JRP's fiduciary duty, I must first determine the parties' actual agreement. Exercising my discretion, I reserve decision on the motion to dismiss regarding CRSS's breach of fiduciary duty claims.

CRSS's Affirmative Defenses for misrepresentation, omission of fact and "the written agreement does not reflect the true agreement of the parties," while all arguably matters of avoidance, are redundant and are stricken. CRSS's Breach of Contract Affirmative defense is not legally sufficient and will be stricken. I will reserve decision on CRSS's Affirmative Defenses concerning bad faith and breach of fiduciary duties. Therefore, Plaintiff's and Counter-Defendants' Motion to Strike is *granted in part, denied in part.*

IT IS SO ORDERED.

Myron T. Steele

Vice-Chancellor

Case 3:05-cv-00275    Document 38-5    Filed 07/22/05    Page 12 of 12 PageID #: 597